HOWARD Y. STILLMAN *vs.* DANIEL L. DRESSER.

WASHINGTON—FEBRUARY 4, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Pleading and Practice.   Demurrers.*

A demurrer, in whatever stage of the pleadings it is taken, reaches back in
its effect through the whole record.

(2)  *Contracts.*

A declaration alleged that X. was indebted to the plaintiff upon a judg-
ment ; that Z. was indebted to the plaintiff for work and labor '(but not
by judgment); that, the plaintiff having taken steps to attach the prop-
erty of X. and Z., the defendant promised to pay the plaintiff the amount
of their indebtedness, such amount to be determined by arbitration, legal
proceedings, or mutual agreement, in consideration that the plaintiff
should assign the plaintiff's claims against X. and Z. to the defendant.
The declaration further averred.that the plaintiff had performed his part
of the agreement and had been ready to have the amount due him de-
termined by arbitration, legal proceedings, or mutual agreement, but
that the defendant informed the plaintiff that he refused to carry out
said agreement or to have said amount determined as provided.   On
demurrer to the declaration :—

*Held,* that the declaration did not state a present cause of action, the
claim of the plaintiff against Z. being undetermined, and the " arbitra-
tion, legal proceedings, or mutual agreement" contemplated by the con-
tract being proceedings between the plaintiff and X. and Z. which should
definitely fix the amount of their indebtedness to the plaintiff before the
assignment of the claims to the defendant.

*Held,* further, that while the refusal of the defendant to be bound by the
agreement excused the plaintiff from a tender of an assignment of the
claims, it did not excuse him from performance of the condition prece-
dent to the right to demand payment.

(3)  *Statute of Frauds.   Promise to pay Debt of Another.*

*Semble,* that the contract set out in the declaration showed a promise by
the defendant to buy the debts and not to pay them, and hence was not
within the statute of frauds.

ASSUMPSIT.   The declaration alleged that the E. Read
Goodridge Manufacturing Company, a foreign corporation,
was, prior to the date of the writ, indebted to the plaintiff
upon a judgment in the sum of $2,368.27 ; that the Good-
ridge Company, another foreign corporation, was indebted to
the plaintiff for work and labor (but not by judgment) in the

sum of $506 ; that the Goodridge Company took a transfer of all the property and assets of the E. Read Goodridge Manufacturing Company and assumed all the indebtedness of the E. Read Goodridge Manufacturing Company, including its indebtedness to the plaintiff ; that on the 16th day of July, A. D. 1896, the plaintiff having taken steps to attach the property of the said Goodridge Company for the aforesaid indebtedness of the said E. Read Goodridge Manufacturing Company and of the said Goodridge Company, and having informed said defendant of such fact and told him of his intention to at once take legal proceedings to recover the amounts due him from said corporations, the defendant promised to pay said Stillman the amount of the indebtedness of the E. Read Goodridge Manufacturing Company and of the said Goodridge Company to said Stillman, *such amount to be determined by arbitration, legal proceedings, or mutual agreement,* in consideration that the said plaintiff then and there agreed and promised the defendant :

"Upon receipt of said amount to assign to said defendant or his appointee, his, the said plaintiff's, claims against said corporations and all his rights as a creditor thereof, and in further consideration that the said plaintiff agreed and promised the defendant to refrain from attaching the said property of the Goodridge Company at said Newport, and from taking immediate legal proceedings against said corporations ; that in consideration of said promise of the defendant he did refrain from taking any action against said Goodridge Company and from attaching their property at said Newport, and has so refrained up to the present time, and has in all respects carried out and performed his part of said agreement, and has always been ready and willing to have the amount due him under this agreement determined by arbitration, legal proceedings, or mutual agreement, but that the said defendant, on the 7th day of October, A. D. 1896, informed the plaintiff that he refused to carry out said agreement or to be bound thereby, or to have said amount determined by arbitration, legal proceedings, or mutual agreement, and ever since said date has so refused."

Heard on demurrer of plaintiff to defendant's plea of the statute of frauds, and on demurrer of defendant *ore tenus* to the declaration.    Demurrers sustained.

(1)    DOUGLAS, J.    This case was heard upon the plaintiff's demurrer to the defendant's plea of the statute of frauds.    In defence of his plea the defendant contends that the declaration sets up a contract which is within the statute ; and also that no cause of action is set forth, because it is not alleged that the amount to be paid by the defendant has been determined in either of the ways specified in the contract.

It was held in *Ames* v. *Hazard*, 8 R. I. 145, "that if a declaration be faulty, a demurrer interposed by either party opens the whole record for the judgment of the court upon the first substantial defect in the pleadings, at whatever stage it may arise."    And the same well-established rule of common-law pleading is repeated in *Railton* v. *Taylor*, 20 R. I. 279, which was decided since the judiciary act went into operation.

Both questions were fully argued and may properly be considered.

(3)    The clause of the statute which is claimed to be applicable is part of Gen. Laws R. I. cap. 233, § 6, as follows :

"No action shall be brought.  Fourth.  Whereby to charge any person upon his special promise to answer for the debt, default, or miscarriage of another person   .   .   .   unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

This section has been uniformly interpreted as applying to contracts of suretyship where the liability assumed is to answer for another, to pay the debt or make good the obligation if the original debtor or person bound does not pay or fulfill his duty.    Mr. Browne, in his work on the statute of frauds, adopts this criterion.    He says, section 192 : "It has come to be customary to speak of such special promise as *collateral* to

the obligation of the original debtor; and though the use of that term as defining the nature of the promise which the statute means to embrace has been sometimes criticised, it is believed to be, not only in the main but in strictness, correct. As will be explained hereafter, there are many cases where the obligation of the defendant is concurrent with that of a third party and is discharged when that is discharged, and yet is not held to be affected by the statute; and for the sole reason, as our subsequent inspection of these cases will show, that it is not essentially an obligation of guaranty of, or, in other words, not essentially collateral to, that of the third party. Understanding by a collateral obligation one which is made for the purpose of securing the performance of another, and which exists only as long as that other exists, it may fairly be said that collateral promises are just what the statute intends shall be proved by writing."

Among the classes of contracts which, though running at the same time, are yet not collateral in the sense defined, is the case of an agreement to purchase the debt. "The principle is," says Mr. Browne, section 210, "that where the transaction between the parties is in its nature a purchase of the debt itself, the defendants promise to pay the whole or any part of the amount to the original creditor, as the consideration of the purchase is not affected by the statute." The principle is stated by Chambre, J., in *Anstey* v. *Marden*, 1 Bos. & P. N. R. 133. In summing up the case he says : " This was a contract to purchase the debts of the several creditors, instead of being a contract to pay or discharge the debts owing by Marden. It was of the substance of the agreement that these debts should remain in full force to be assigned to Weston. When he had purchased them he did not mean to exact them rigorously, but the contract was a contract of purchase, and he had a right to make use of the names of the original creditors to recover the same to the full amount, if Marden had effects to satisfy the debts. Instead of being a contract to discharge Marden from his debts, it was a contract to keep them on foot." The fact that the debts were assigned is regarded by Mr. Browne as the cardinal fact in the case.

" This," he says, " is what gives the transaction the distinct-
ive character of a purchase," p. 270, n. 1.

The case of *Mallet* v. *Bateman*, L. R. 1, c. p. 163, which is
cited by the defendant, held that where a party having an
interest in building a house promised a mercantile firm that
if they would furnish the contractor materials on credit and
draw bills of exchange upon the contractor, he would buy
the bills at a certain discount endorsed by the merchants
" without recourse." The court held the party to be simply
a guarantor for the contractor's debt, and his promise to be
within the statute. Whether this case were rightly decided
or not, as has been doubted (Browne Stat. Frauds, p. 246,
n. 1), it is very different from the case at bar. There the
promise, which was construed to be a guaranty, was part of
the original transaction, and the rule in such cases is that
where credit is given to the person who receives the goods, a
promise by another to pay for them is collateral. *Wood* v.
*Patch*, 11 R. I. 445. The issuing of the bills and the dis-
count of them were held to be merely the machinery for
carrying out the contract of guaranty.

The contract set out in the declaration shows a promise by
the defendant to buy these debts, not to pay them. The
plaintiff agreed not to enforce them against the original
debtors, but to have the amount of them determined and
then to assign them. He was to retain no claim against the
original debtors, but to look for his price solely to the defend-
ant. He accepted the defendant's promise to pay him a sum
of money, and promised to give defendant therefor the claims
against the corporations and other property. We can see no
difference in the essence of this transaction from a sale and
purchase of any chose in action. If the contract were one of
guaranty it would have contemplated the continuance of the
liability of the original debtor to the plaintiff, and the en-
forcement of that liability by the plaintiff, if possible, before
recourse to the defendant, and the extinguishment of the
obligation as a debt if it should be paid ultimately by the
defendant ; but, as was said in *Anstey* v. *Marden*, instead of

being a contract to discharge the corporation from its debts, it was a contract to keep them on foot.

Ths case seems to come directly within that decision, and we think the reasoning in that case is conclusive of this question.

(2)      We come next to consider whether, under the terms of the contract set out in the second and third counts, the plaintiff states a present cause of action, and we are of opinion that he does not. The amount to be paid by the defendant was "the amount of the indebtedness of the E. Read Goodridge Manufacturing Company, and of the said Goodridge Company to said Stillman." This indebtedness is alleged to have consisted of a judgment obtained by the plaintiff against the E. Read Goodridge Manufacturing Company upon a claim against that company for services rendered by Stillman and Heaney and assigned to this plaintiff, which the Goodridge Company has become liable to pay, and of a claim against the Goodridge Company for services rendered by Stillman and Heaney for them, also assigned to this plaintiff. The judgment against the E. Read Goodridge Manufacturing Company, of course, is determined; but it does not appear that the Goodridge Company has acknowledged its liability upon it, and the other claim is "undetermined," and the words of the contract, "such amount to be determined by arbitration, legal proceedings or mutual agreement," are applicable. It is argued by the plaintiff that these words are to be construed as meaning an agreement of, or arbitration submitted to by, or legal proceedings between, the parties to this suit, but such a construction cannot be supported in view of the character of the contract and its subject-matter. The claims were apparently not admitted by the party sought to he held. They were to be assigned to the defendant. This provision obviously was designed to give them to him after the amount should have been definitely fixed.

No agreement by the defendant and no arbitration or litigation to which the Goodridge Company was not a party could determine the amount of the claims against it, and until the amount is determined the defendant does not know how much to pay for them and does not promise to pay any amount.

It is alleged that the defendant has waived this condition by giving notice that he refused to carry out his agreement. We do not think the notice had such an effect.  It may well be held that the defendant's absolute refusal to be bound by the agreement excused the plaintiff from a tender of an assignment of the claims, but it did not transform a promise to pay a sum of money to be determined in a certain way into a promise to pay an indefinite and unascertained sum, nor did it excuse the plaintiff from the performance of a condition which by the terms of the agreement was to precede any right to demand payment of the defendant.  It was not in the power of the plaintiff to compel the Goodrich Company to agreement or arbitration, but it is in his power to have the amount of the claims determined by legal proceedings, and this he must do before he can demand of the defendant the amount so determined. ·

The demurrer of the plaintiff is sustained.  The plea of the defendant to the second and third counts of the declaration is overruled.  The demurrer *ore tenus* of the defendant to the second and third counts of the declaration is sustained.

*A. B. Crafts*, for plaintiff.

*Edwards & Angell*, for defendant.